on behalf of the uh on behalf of the uh Joe. Thank you. Mr. Scalzo, you may proceed. May it please the court. Justice Hutchinson, Justice Burke, Justice Jorgensen, Counsel, Mr. O'Brien. My name is Todd Scalzo and I represent the appellant Paul Heinrich. Um I apologize. I have a bit of a cold. Um before getting to the issues uh in our brief, I'd like to address the jurisdictional question that this court has raised in its October 16th order. Um as the court is aware, uh our statement of jurisdiction relies on look at jurisdiction in light of Prinza versus Village of Lansing, which is a first district decision from 2010. Uh under the best case, um declaratory judgments construing a premarital agreement in a dissolution action uh are reviewable under Rule 304A, uh even while the dissolution action is pending and prior to final judgment. Now in reaching that holding, uh the Supreme Court didn't just put a label on these orders and call them 304 orders. It actually went through an analysis of why these orders qualify as Rule 304 orders. And what the court found was um when you file a motion for declaratory judgment that asks for the construction of a premarital agreement, uh you are raising a declaratory claim that is separate from the non-declaratory claim, which is the dissolution action. Uh and so when the court construes a premarital agreement pursuant, excuse me, pursuant to a motion for declaratory judgment, uh it terminates some part of the controversy um because it uh it resolves the declaratory portion, uh but the non-declaratory portion of the dissolution claim remains pending. Uh for that reason, um the order qualifies under Rule 304 because it's a judgment as to one or more but fewer than all claims in the action. And I think uh that this holding comes out of the Supreme Court's recognition uh that the construction of a premarital agreement will have a large effect on the outcome of many of the issues in a dissolution action. Well in the Pritzker case, the outcome of that particular that declaratory had an effect on the total outcome and it was considered independent and it was considered final on the day it was rendered. So what's the difference? The difference, Justice Hutchinson, is that uh after the um construction of a premarital agreement, uh there is still a pending dissolution action where the actual uh um awards um under the declaratory judgment still need to be addressed. Well there was still an issue of injury or liability, I can't remember which, in Pritzker. Not in Pritzker, Your Honor, because in Pritzker it was a dismissal of the original complaint. And so that was a final determination of the rights and liabilities of the plaintiff. There was nothing left to be done uh by the plaintiff other than to appeal that judgment. Well it was a dismissal without prejudice. Well certainly, and Justice Burke, certainly the plaintiff in Pritzker could have filed an amended complaint which realleged his original theory. They did file an amended complaint but they did not include their original theory in their amended complaint. They only included a new theory, the underinsured motorist coverage theory. And I believe that had they realleged um the original theory under the uninsured theory, um that would have allowed uh the original uh that original claim to continue. So wait a minute, wait a minute, we wait to see what is filed as an amended complaint to determine whether or not the original order was filed. I think there's a lot of appeals that way because if the amended complaint isn't filed until after 30 days and it doesn't include the original claim, the person's out of luck to appeal the earlier dismissal. Well that's what the Pritzker court found, Your Honor, and it's because uh the um uh the I also think that if the plaintiff in Pritzker had filed both claims under two different theories in the original complaint, I think there's a possibility that that could have been construed as a Rule 304 order. Um and also the plaintiff in Pritzker had the choice of realleging his complaint and the court found that he abandoned his original theory and that had some legal consequence to it. There was again nothing left to be done uh with respect to the original theory. Uh he it was it was completely abandoned and he had a new theory. Um so he couldn't go back and say now I was I would say his rights and liabilities were finally determined by the trial court's dismissal in that case. But you would agree that the facts in our case are a little different than best and that you filed the motion to reconsider after 30 days. I don't think that that those facts are present at best, correct? Uh that's correct, Your Honor. Actually what happened in best is there was a bit of a belt and suspenders approach. They so the issue that is in this case was really never was not presented in best. Um so it's not clear um you know how Pritzker uh jived with best. But uh certainly as I stated at the outset the court went through an analysis of why it's a 304 order and said quote we agree that this order is appealable under Rule 304A. Um so I I think that um as I was saying because of that, not just because of the label, because of the Supreme Court's analysis, um it invokes all the provisions of Rule 304A. And that includes the provisions that say in the absence of an express written finding uh a declaratory order is not is subject to revision until final judgment. And it also um invokes a provision that says that um it's not a final or the date of final entry is treated as the date of the express written finding for purposes of appeal. Isn't there some policy though with I mean maybe it's unstated but the purpose of 304A is to move a case along. This well first of all you didn't make the motion for 304A. They did ultimately in response to your motion to reconsider. But 17 months went by. We're not moving anything along by that. Uh well that's correct Your Honor but I think um the point that's exactly the point. You have two parties and a trial court looking at an order at any given time. Any party could have moved for a 304 finding at any time. So the extent that there was a delay uh the court and both parties uh bear some responsibility. Um so the delay um obviously there was a uh it was missed by all parties on some of the allegations. Because the allegations are that at every every chance possible there has been an effort to delay on your client's part. And shouldn't we take that into account if we just look at the record and don't listen to a word you say? Uh well no well I guess you would have to take issue uh with I guess the specific circumstances that come up. Whether it's um hearings in the trial court that we have or um motions granted by the trial court or the arbitrator. Um certainly um there were extensions and uh both sides I think um had had certainly their own strategy and certainly you could say both sides benefited um from the delay. For example if the order had been immediately appealed we could have challenged a premarital agreement and theoretically um my client could have sought attorney's fees against uh Mrs. Heinrich during the year and a half that this case was heavily litigated. So to say that. On what basis? Well on the basis that were determination that the premarital agreement was not valid? That's correct. On the basis that the attorney fee shifting ban is void. Um so uh certainly there has not been a level playing field. Our client is the financially disadvantaged um party in this case and he's had to litigate uh without being able to seek any attorney's fees by his own choice. According to a lot of the record he was a successful lawyer who decided he wanted to teach people how to fly and rent charter airplanes. And that's not usually something that we encourage when you're getting a divorce. So you know he's he's financially um financially challenged by his own choice. It appears I don't see anything in this record that I've seen thus far that says that that Mrs. Heinrich strongly encouraged this new line of practice or new line of business. I mean it happened. Yes. I'm not I'm not sure to be honest Justice Hutchins and how that fits into the 304 analysis. I mean certainly we get into all the facts you know about um well I'm talking about delay right there. If you just look at this record without any argument or any briefs from either one of you, it looks like there is a significant effort to delay these proceedings. For what reason? I don't know. But that delay does not appear to be coming from the other side. Well justice Hutchinson, but they have a safeguard against that. They could have brought the motion for a 304 finding a week after the order 20 days after 30 days off the order. So uh we can't just be solely pin pin with whatever blame there there may be for the delay. They could have brought it at any time and I suspect the trial court would have granted it at any time. Um if I'm if I may move on to the first issue on appeal. Um it's um our first issue that the attorney of fee shifting ban is void against public policy. We don't think this is a very complicated argument. It's pretty straightforward. This court in best in 2009 held that the attorney fee shifting ban in a premarital agreement is against public policy because it discourages parties from litigating in their Children's best interests. And what when was it ever invoked by your client on behalf of anything that related to the Children? When was when was this issue ever invoked other than when you challenged the agreement? Because we have a support agreement in place and I joint parenting agreement in place that came, I would say voluntarily, but it came through the efforts of counsel in the parties. So where was this fee request ever invoked? Well, early in the case, uh, Justice Hutchinson in october of 2010, our client filed a motion for interim attorney's fees. He was representing himself at that time and he was looking to hire counsel. Uh, he filed a motion for anticipated attorney's fees and they filed a response which raised the affirmative defense of the attorney chief. If attorney fee shifting ban in the premarital agreement and the trial court denied our clients motion for attorney's fees. And again, that's despite the vast disparity in financial resources between these two parties. But he was asking for fees generally. Did he relate them in any way to the issue of child custody, child visitation, child support, his motion for attorney fees. That was before the joint parenting agreement was entered. And he does say that anticipated fees with this case will involve issues of custody. Um, and he might say visitation. I know he definitely says says custody and he asked for a request of 25 to $75,000 in anticipated fees. And again, that was second. Is this key shifting, um, provision severable from the rest of the agreement? It is. The agreement has a severability cost. So we certainly argued in the alternative that the trial court or this court couldn't find that void and could uphold the rest of the premarital agreement. And is there anything pending concerning support or visitation at the current time that he on May 2nd, 2011, there was an agreed order entered stating that the issues of support Children's health insurance and medical expenses and college expenses were reserved after arbitration. The custody order is still in force and there doesn't, we haven't had any new filings relating to that. There haven't been any new filings. Um, no. And the fee provision could be internally severable also as to say that it's, it's so, um, void only as to Children's issues, but still in effect as to other issues. Yes. And in fact, that's our, that is our position that as it relates to child Children's fees. Yes, I think you were going to go on to the other issues with unconscionability in that. My question is, you know, the original motion for declaratory judgment really didn't have any facts in it, didn't have anything about unconscionability, basically just said, please tell us court whether you believe this is. Um, because when I looked at the transcript, I thought, why is the judge just ruling based on the judge basically just said, I read this and I'm ruling it's fine. Well, then I looked at the pleadings and said, well, that makes sense because the plea is really an ask the court to do anything. Then on the motion reconsider, you throw in all these facts. Isn't that problematic? Well, uh, certainly there were new facts that came about through discovery after the original thing. So your client didn't know that he had to, he signed this right on the day of his marriage and he didn't know he signed it a few hours before he was married and all those things. No, those facts were noted, but the facts with regard to the nondisclosure of the business entity by Mrs Heinrich was not known at the time until her deposition in July of 2012. And that has a great legal consequence because both under Missouri and Illinois law, the nondisclosure of assets is a significant red flag as to the validity of a premarital agreement. What happens if that entity is not in existence or it comes from another entity that you well knew about? Well, those are, that's why you have an evidentiary hearing on it. That is for the trial court to decide. Mrs Heinrich may very well have an explanation. In fact, she explained it in a September or September 2012 meeting and you have a hearing and the trial court may agree entirely with her. And we're simply asking that we be given the opportunity to have that hearing. The affidavit from her accountant of 20 years that the court considered that, I mean it was attached to her pleading, correct? That was in the arbitration pleading. That was not in the trial court. So the trial court didn't know about that one? No, no. It wasn't presented to the trial court. What other new evidence did you have that came out in the motion to reconsider other than this new, this business entity? Well, then the motion to reconsider was directly challenging the attorney fee shifting ban on child related issues as to, based on the best case. I'm looking, I'm just looking at the second issues that you raised on uncatchability. It really just, on uncatchability the only issue is that new entity. We thought the non-disclosure element was the crux of it, but we also felt we needed to bring to the court's attention what we would be presenting in the event that the court granted an evidentiary hearing on the premarital agreement. So then we did go into all the facts and circumstances surrounding the execution of the premarital agreement. Best was a valid and published case when the first motion for fees was made, correct? That's correct, Your Honor. But it was not cited in any way to? It was cited by actually Mrs. Heyrich. It was not cited, they omitted the part about the premarital agreements that violate public policy are void and unenforceable. And our motion for declaratory judgment and fielded a transcript asked for just general direction. Does this, does this premarital agreement conform to Illinois public policy? Is it violative? And so the issue in all candor was not directly brought to the trial court's attention, but the trial court certainly could have looked at the premarital agreement and the best case, which was cited on April 8th, 2011, and could have determined on its own that it was void. So how many, if the only issue, as you're saying now, was to make sure it was consistent with public policy, how many attempts at a declaratory judgment on the issue of this premarital agreement are allowed as a matter of law? Are they infinite or are they limited or what's the situation? Well, void judgments are subject to collateral attack at any time. There are other rules. I don't know exactly what Supreme Court rule it says, but it says you can only really bring one motion to reconsider. So I don't know that we could do it multiple times. And then there's the issue of the Rule 304 finding. I think once that's entered, you've got a choice. You've either got to appeal or it's got to be enforced. I got a question. Okay. Let's assume for the sake of argument that we do have jurisdiction here. Bottom line, what are you asking this court to do? Well, I'm asking the court to find it as jurisdiction. I'm asking the court to reverse the trial court's ruling that the premarital agreement was valid solely on the attorney fee shifting ban as it relates to children's issues. Because I think that's purely a matter of law that this court can just reverse outright. As to the rest of the premarital agreement, and this court could find that that provision is severable from the rest of the premarital agreement. But beyond that, with the rest of the premarital agreement, we would ask that this court remand the case to the trial court for an evidentiary hearing on the conscionability and the validity of the premarital agreement. Why should we give you an additional hearing? Well, because there's never been an evidentiary hearing, Justice Jorgensen. Did you lose on the pleadings? We find that the court was wrong based on what was presented to it, not a second bite at the apple here? Well, Justice Jorgensen, I don't know what makes a void order against public policy because there was some procedural or time lapse, something like that. We're on the second issue, the severability, unconscionability. You had an opportunity to plead the issue and the court ruled on what it had and found that it was not unconscionable. Is that correct? My question is, why do you get a second bite at it? Because it was a Rule 304 order. Rule 304 orders are subject to revision at any time prior to final judgment in the absence of a Rule 304 finding. I guess the right framing of the question from our perspective is, are we barred from bringing it? And the court can easily question why there was a delay, but as I said, are we legally prohibited? So what you want to do is go back to your trial court and have another opportunity to raise the issue that this agreement is unconscionable and have an evidentiary hearing? Yes. And I'm asking you, why hasn't that already been resolved? Well, I mean... And then it becomes a question of whether the court abuses discretion. Because really what the court did, when the court found the premarital agreement invalid and forcible, it didn't really apply the premarital agreement. It said that, I mean, the premarital agreement, strictly written, says that all matters go to an arbitrator. And you have both sides at the April 8th court hearing saying, well, that doesn't sound right. Children's issues should stay with the trial court and only financial issues should go to the arbitrator. And the trial court should apply Illinois law to children's issues. And the arbitrator should apply Missouri law. So certainly the premarital agreement has never been strictly enforced the way it's actually written. So we think that the court never really upheld it. But I think we overall agree that the children's issues should be heard by the court. Were children's issues resolved by that time? No. Except for those that were resolved? When did the joint custody agreement get entered? May 2nd, 2011, which was just a little bit of months after the hearing on the premarital agreement. But it had been in the works. It didn't just come up within a month. No, there was a GAO appointed and she was working on it. And really what the understanding was coming out of the April 8th court date was that we were going to go to trial on May 2nd on children's issues only. And so we had that month to either work out a joint parenting agreement or go to trial. And it turns out we worked out a joint parenting agreement. We started off on the right foot and then we went and litigated. So the court agreed with you that children's issues should not be part of the premarital agreement and took it out. But it's also true that you asked for the arbitration to go forward before you brought the motion for summary judgment or before you brought the motion for declaratory, didn't you? Well, the arbitration... You wanted to enforce the premarital agreement in that regard. Well, I guess we were... Again, our motion for declaratory judgment was both substance and process. It was something in the way of a case management... a request for a case management order. How are we going... If we go to arbitration, what laws applies? How is discovery going to be handled? Are we going to pick an arbitrator? How is an arbitrator going to be selected? Again, the premarital agreement says if the parties can't agree, they'll pick a judge out of St. Louis County, Missouri. There were a lot of issues with... Appeals. How is the appellate process handled? So there was that aspect to our motion. Those were questions that both sides had. And so when we were... I think coming out of the April 8, 2011 court date, the parties were mostly focused on addressing the children's issues that were immediately coming up. And there was an understanding that there was going to be a long process in arbitration as far as picking the arbitrator, conducting discovery, doing procedural matters regarding is summary judgment appropriate, or are the parties entitled to a hearing? So I guess that was set aside for the time being. And what basically consumed the parties in the year and a half was an intense level of litigation really on children's issues, on visitation, on support. And so that's... And it wasn't until we came back to the arbitration hearing that we asked for the court to reconsider its prior rulings. Thank you, Mr. Scalzo. Any more on time for rebuttal argument? Mr. O'Brien, you may proceed. May it please the court, Mr. Clerk, Mr. Scalzo, parties. Judge, my name is Joe Henry Heinrich. She is the appellee. And I'm going to start off just addressing some of the jurisdictional arguments. And the first thing that I would submit to the court is that this court does not have jurisdiction to hear this appeal. And as we were directed to look at the Pritzker decision, as you're aware, in Pritzker, the plaintiff appellant filed a motion for declaratory judgment. The motion for declaratory judgment was disposed of in the trial court, and the plaintiff appellant then took an appeal. The appellate court in Pritzker, the declaratory judgment was final and appealable on the day it was entered. And because it was final and appealable on the day it was entered, the plaintiff only had 30 days pursuant to Rule 303A1 to file an appeal. And in Best, everything happened within that 30-day period, correct? Correct, yes. And Best is obviously distinguishable to what you just alluded to, Your Honor. Have you ever seen any other cases where a dismissal order without prejudice was  filed? I have not. I haven't either. So my question to you is, what if Pritzker is wrongly decided? Yes. Well, beyond Pritzker, if you look at the clear language of the statute that governs declaratory judgments, that clear and unambiguous language itself provides that the court making binding declarations of rights having the force of final judgments. So I believe that language is clear and unambiguous, and I think that's what, you know, Pritzker interpreted. And there's also been other cases, although from my research, they are all from the First District, that have found similarly to Pritzker that in interpreting that statute, declaratory judgments are final and appealable on the day they are entered, regardless of whether there's 304A language in that order or not. It doesn't matter. I mean, that's the same language that they use in Best, correct? Correct. And that was a 304A. Yes. We're talking about whether or not there's 304A language, and the only case that I saw was this Pritzker case. I mean, I haven't seen one other than that case that without 304A language in a case where there are clearly other claims pending. Now, you would agree in this case, when that declaratory judgment motion was resolved, there were other claims pending in the dissolution matter. Yes, that is correct. So, I mean, we have one claim that's resolved within that dissolution matter and under Best, the court, you know, distinguished Leopando and decided that was final and appealable with 304A language. Correct. My question is, without 304A language, you know, other than Pritzker, what else is out there to tell us that when other claims are still pending between the parties and there's no 304A language, how is this final and appealable? Well, other than Pritzker, there is another case that I found out of the 1st District, Universal Underwriters Insurance Company, 372 LAF 3D, 1st District of 2006. Oh, that is cited by Pritzker. Oh, that is cited by Pritzker, correct. And I believe there was no 304A. But nothing outside? Nothing outside of the 1st District, yes, to be fair. But I do think that, although it's the 1st District, I think it's, Pritzker is persuasive and I think it's controlling here. So, I think that the Appellate Court lacks jurisdiction. That would be my first argument. Well, the 2nd District has had a long series of cases about claims. Your claims all have to be resolved. We had a certified question to the Supreme Court and things of that nature. And I can't remember the name of the case now, but it was a divorce and it was a finding of no contempt in a divorce case. And the Supreme Court said, no, we have to resolve all of the claims. Would not this motion for declaratory judgment be considered one of the claims in this marriage process or in this dissolution process? And therefore, would we still have a claim pending that would need to be resolved? There certainly would be other claims pending, Judge. But also, in the Supreme Court case of Best, the Court provides entry of a declaratory judgment is improper if it would not terminate the controversy or some part thereof, giving rise to the proceeding. But in Best, although there was 304A language, I believe they did find that resolving the issue of the enforceability of the premarital agreement did resolve a controversy which was sufficient. If we found no jurisdiction in this case, what is the status of this case then? Where is it? Does it go back to arbitration? Correct. There was, and just to recollect on what Mr. Scalzo said, there was a motion for summary judgment that we filed in the arbitration proceeding based on the premarital agreement being found valid and enforceable. The same day that that motion was set for hearing, Mr. Scalzo noticed up his motion to reconsider the order that was entered a year and a half earlier. Is there any statute of time on arbitration or can, I mean, can you actually go back to that arbitration hearing at this point or would you have to start over? We can go back to the arbitration. The arbitration proceeding was basically stayed pending the resolution of the appeals. Well, at first it was the resolution of the motion. Correct. But then I guess when the appeal came, it extended to the appeal. Absolutely correct, yes. What if this was a motion to declare rights under the premarital agreement and didn't cite 701? I think it would be a different story. So really, isn't it formal for substance if we're going to say, if you write the number 701 in your motion, that means you've got to appeal it right away. But if you don't write 701 and just file a motion to declare rights, then you don't have to file your appeal right away. Well, I think if you write a motion that includes a lot of people in your line of work. It certainly would. It certainly would. But I think a motion asking to declare rights even if you don't include the statute could certainly be construed as a motion for declaratory judgment over 701 and I think your right litigants need to be careful of that based on the principles. Well, doesn't that just completely muddy the water because then someone has to decide is it form over substance? Is the presence of 701 really the touchstone or is it the gist of what you're asking for? Aren't we just creating a monster here? Could be, yes. But I think it could be creating a monster if you're right. But I think that based on the Pritzker decision, I think that the courts could be able to interpret what someone is asking for based on the motion and if it's a declaratory judgment, I think that order should be final and appealable as of the day it's entered. And I think in this case, I think public policy supports that and I think Justice Hutchinson alluded to this before and that if the reverse is true, if it's not a final judgment which Mr. Scalzo was arguing, this allows litigants to come back one year, two years, three years after the order is entered and say, wait a second, I want a second bite of the apple. I want to go back and have an evidentiary hearing when I never requested one. I want to submit all these arguments that I could have made at that point in time or I want to file an appeal. And it certainly will delay proceedings and it certainly has delayed this proceeding as it's all over the record. What's the difference between this pleading, asking the trial court to declare the rights and duties, I guess, under the agreement, versus just a really sophisticated and complicated case management settlement or, you know, in chambers where you say, look Judge, here's the agreement, you know, what do you want us to do here? How do you want us to do the discovery? How do you want us to do it? That clearly would not be effective case management. What's the difference here? Is it because we did it in open court? Correct. Is it because it was precipitated by a pleading rather than a request for a pretrial? The difference is that in this case, if you look at the record, the motion that Mr. Scalzo filed is brought pursuant to section 701. It states that very clearly in the very beginning of the motion. We fully briefed it. We responded to it. Mr. Scalzo had the opportunity to have a hearing to present evidence. He chose not to do any of those things. And then there was an order entered in connection with that, which I submit would be final and appealable because it was brought, the whole thing started being brought pursuant to a motion for declaratory judgment pursuant to 701. See, so that's the touchstone. Yes. Again, we're back to that monster question. So if I put 701 in when it's resolved, 30 days? Yes. If I don't put 701 in, then I've got a 50-50 chance as to whether or not a trial court decides this really was a request for a declaratory judgment. Yes. In which case it's appealable within 30 days. I would agree with that. Or the trial court said, eh, maybe not. I'm just going to enter an order and I'm not going to call it a declaratory judgment. Appealable at the close of the case. Yes, I think that what you said is correct. Are we really creating some pretty muddy water there? It certainly could be. Slippery slopes? It certainly could be. And again, litigants need to be pursuant to 701 or that can be construed as a motion for declaratory judgment. Okay. I see. Alright. Beyond that, just briefly, I think that if on top of that the motion to reconsider pursuant to Section 1203 should have been filed within 30 days if this order was final and appealable. And that was not done. So I would also submit that the trial court never had jurisdiction to entertain the motion to reconsider. Assuming that there was jurisdiction for this court or the trial court, there are some arguments that were raised in my brief. I believe there was a forfeiture argument that I made that clearly applies here. And forfeiture is the failure to timely assert a right. Again, not to belabor this, but this issue was set for hearing on April 8th of 2011, which was a year and a half prior to Mr. Scalzo even filing his motion to reconsider. Mr. Scalzo, on April 8th in response to his motion to reconsider? Yes. Well, it was actually argued in the emergency motion for an immediate hearing on the motion for reconsideration of the trial court's order. It doesn't explicitly say forfeiture in that, but all the elements of that defense are clearly enumerated in my brief. Assuming forfeiture, there are two issues that that raises. One is, if in fact this fee-shifting provision is void, at least in part as it relates to children's matters, void because of public policy, of course you don't forfeit that, correct? Correct. And then the second thing is, counsel was claiming some newly discovered evidence, and I had a question about that. The only thing that I saw in there, maybe there's more, but involves this new business or this newly discovered business. Did you file the affidavit of the accountant in this case, or was it only in the arbitration? Yes, I'd like to address that for you. It was a motion that I filed in the arbitration proceeding, but the pleading was actually filed in the trial court. And just to clarify, the alleged newly discovered evidence was that the premarital agreement lists McKelvey Homes, which my client had an interest in at the time the prenup was signed. It does not list McKelvey Rental, which they're claiming that was a failure to disclose assets. McKelvey Rental was acquired after the premarital agreement was executed, so there's no way that could have been disclosed obviously at the time the agreement was signed. And that was corroborated by an affidavit of Mary Lise Heinrich, who Judge Hutchinson referred to as being her accountant for 20 years. That affidavit was filed in the trial court record and was provided to Mr. Scalzo. Was it part of your emergency motion? Did you attach it as your... It was not part of the emergency motion. It was part of, I believe, a brief connected to a motion for summary judgment in the arbitration proceeding. But then how did it... It got into the trial court by virtue of the fact that it was part of that pleading, but do we know... I mean, if the trial court ever saw that? I can't answer that. I don't know if the trial court ever saw that. I do know that... I believe Mr. Scalzo and my office had an agreement to file all the arbitration documents in the trial court, so that is why it was filed. I don't know if the trial court actually saw the document, but it was made a part of the record. And what was your position? I mean, how did you argue the issue of well, these facts, the premarital agreement, the coercion, the circumstances were all known on the day three weeks before the date of the marriage and then on the day of the marriage. That was primarily your forfeiture argument? Correct. Yes. That argument also leads me to another argument where it's well-settled law that the purpose of a motion to reconsider is to apprise the trial court of changes in the law or misapplications in the law. Mr. Scalzo's motion to reconsider doesn't even recite the requirements of the well-settled law and as you just alluded to, all of the allegations in that motion were clearly available to him at the time the trial court heard the motion for declaratory judgment in the spring of 2011. So there was no newly discovered evidence. There were no changes in the law and there's no allegations of misapplication of the law. So there were no allegations of misapplication, so that only leaves the two. What's the purpose of a pleading in this situation? What's the purpose of a pleading in this state? To put someone on notice as to what they're going to be pleading. And so was the trial court on notice that it had misapplied the law? No. And did you respond to a pleading of misapplication of the law? No, because it's never been, to my knowledge, it's never even been alleged other than this argument about BESS which came up a year and a half after the trial court's April 8, 2011 order. And if I can address BESS, I think that issue is not right for this court's review. In BESS, the issue solely before the court was the attorney fee shifting ban as it relates solely to child related issues. There's a motion for declaratory judgment and it was resolved and that issue is not right because that, the attorney's fees issue as it relates to child issues was never raised in a pleading filed by Mr. Heinrich in the trial court. There was a motion for fees filed in 2010 which I just looked at when Mr. Scalzo was arguing and I didn't see any mention of child related litigation or custody or anything along those lines. That motion was denied and we're obviously far beyond the time Mr. Scalzo has to file a notice of appeal regarding that order. And there's been no petition for fees filed subsequently to that. So that issue is not before this court. The declaratory judgment motion, I mean it was asking for fees from the parties under this agreement. So why wouldn't it be encompassed under that? Well because the, it was asking for that and the trial court found the premarital agreement to be valid and enforceable at that time and I'm assuming the trial court didn't say anything about attorney's fees because that issue wasn't put before the court at that time because it wasn't relevant at that time. Nobody had filed a motion for fees before the trial court so there's no reason to make a ruling at that point in time just as there's no reason to make the ruling today. Once again even if there is a problem with this shifting agreement, again in the pleadings for that motion for declaratory judgment is there any reference to that section, the fee shifting section? No, absolutely not. And did you ever respond to that? No, I don't believe I did because it was never brought up in that pleading. I believe I have responded to it in the arbitration proceeding when it was a year and a half after the trial court's order it was brought up but not prior. And did the court ever address it? No. And in any sort of argument or contest standing in front of the bench did Mr. Scalzo ever say oh by the way we have a fee shifting agreement that's in violation of in the matter of the marriage of best? I don't believe so, no. Didn't Best hold that it's appropriate for the appellate court to look at this matter of public policy in the first instance? Yes, I mean I think an appellate court can always look at a matter of public policy and that's fine but I just don't believe that that issue is right because Mr. Heinrich hasn't made a request for fees as it relates to child related issues. Well let's say it is right. I mean you do agree with the holding in Best and this fee shifting provision was intended as written to apply to all issues was it not? That's correct and my only response to that would be assuming that it is right as I believe Justice Hutchinson referred to the premarital agreement provides that it is severable. So if there were a motion for fees filed I think the appropriate order or response from a court would be that there could be no ban as it relates to child related litigation because that's what Best says. So I think that would be correct but I just don't think it's right for review at this time. Anything else? No thank you. Thank you counsel. Thank you. Yes First again I'd like to go back to jurisdiction and address the Pritza case because I think the Pritza case applying the policy in Pritza to dissolution cases like ours would be very hard to do without running a file of the Best case, the Illinois Supreme Court's holding in Best and the reason for that is if you were to hold that a declaratory judgment construing a premarital agreement is appealable under Rule 304 only to the extent that a Rule 304 appeal fits within the confines of Rule 303 then you're erasing the distinction between the rules and Rule 303 Rule 303 essentially swallows Rule 304 and I think that that contravenes Best which says that these orders are appealable under Rule 304. You need special permission from the trial court which is the express written finding but then there's also these other provisions that come in as a result of Rule 304 I also think that applying Pritza may very well cause more appeals At least under Rule 304 you have to go to the trial court and you have to get the express written finding that there's no just reason for enforcement or delay or both. Under Pritza you could just appeal it as a matter of right and also Rule 304 expressly incorporates a reference to the rule through Rule 303 not the other way around so I think it would turn the Supreme Court rules in that scheme on its head and again there is the policy in dissolution actions again that I said I think this is critical that the construction of premarital agreement will determine so many issues in the dissolution action that the Supreme Court wants these to be reviewable with permission from the trial court and not have to wait until final judgment But the fact remains that 17 months passed that could have been otherwise And I can't stress enough Justice Hutchinson that the adversarial process itself resolves that issue. You have the trial court looking at this order You have two litigants looking at this order. Anyone could have filed a motion a week after the order, two weeks. I guess that's my best answer to that question is that obviously to the extent that anyone wants to allege benefit or prejudice from this delay but neither party or the court entered this express written finding so and yet anyone had the ability to do so so I don't think I don't see this as problematic and causing unnecessary delays in all cases because anyone can bring the motion and get the finding and also just a clarification on some matters as far as the arbitration pleadings our understanding was that the arbitrator was keeping the official record of arbitration pleadings therefore none of our arbitration pleadings appear in the trial court record. They do exist. They've been given to the arbitrator but we chose not to also file them in the trial court Also with respect to the motion to reconsider we cite Itasca Bank and Trust which is this court's decision from 2004 for the proposition that you can simply go to a court and say your honor we think you got your last order wrong and we think you need to reconsider it and we ask that you do so. Don't you have to though under Itasca tell the court and not so much the court but the other parties to respond. Give them notice of what your primary problem is. Where do you say you misapplied the law judge? The motion to reconsider specifically cites the Best case and says that the attorney fee shifting ban is void as to child related issues. The transcript is replete it's in the record report proceeding pages 10 and 11 counsel argued to the trial court that we were attacking that provision in the premarital agreement based on Best Again they didn't file so much a response to our motion to reconsider as they filed their own motion for immediate hearing in rule 304 finding. So certainly the matters counsel has given notice. He argued against it in the trial court and he argued successfully against it in the trial court. The trial court ended up agreeing with him and said now the court's actual ruling on the record was bare. It just said timeliness and no new facts or law but certainly in denying the motion to reconsider the court was upholding the attorney fee shifting ban which Justice Burk as you said encompassed I think all issues child related or non child related so the matter was directly brought to the court's attention and to counsel and it was the motion to reconsider was denied. The only newly discovered evidence that you plead in the motion to reconsider though is this new business entity correct? Yes. Was there an affidavit on file in the court file when the court ruled on these motions the motion to reconsider as well as the motion for 304A finding was there that affidavit that counsel speaks of in the court file that said that this entity was created after the premarital agreement was signed? Yes, yes because they had we filed our motion to reconsider on October 1st. They had filed an arbitration pleading the week before on September 26th 2012 which contained this affidavit for the first time and explained for the first time the whole history of this business entity which was a new explanation from Ms. Heinrich's July 10th 2012 deposition where she seemed to not really know what the history of it was. Was there anything that contradicted that affidavit in the record at the time of that ruling? Oh no, no because we have not filed a response. They filed it on September 26th 2012 the motion to reconsider was filed on October 1st 2012 and so no we had not responded at that time to the arbitration pleading or to the affidavit. Thank you. We would like to thank both attorneys for their arguments today. The case will be taken under advisement with an opinion issued in due course. We are adjourned.